```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                         FORT MYERS DIVISION


MIGUEL LLOREN,

                    Petitioner,

vs.                                       Case No.   2:09-cv-767-FtM-99SPC

FLORIDA DEPARTMENT OF CHILDREN AND
FAMILY   SERVICES,   TIMOTHY   BUDZ,
Facility   Administrator,   Florida
Civil Commitment Center and STATE OF
FLORIDA,

                    Respondents.
_____
```

## OPINION AND ORDER

### I. Status

Petitioner Miguel Lloren (hereinafter "Petitioner" or "Lloren") initiated this action, on October 23, 2009, by filing a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1, Petition) in the Unites States District Court for the Southern District of Florida, Miami Division. The Petition subsequently was transferred to this Court (Doc. #5).[1] Petitioner, who is civilly committed to the Florida Civil Commitment Center located in Arcadia, Florida after being determined to be a Sexually Violent Predator, pursuant to §§ 394.912-17, Florida

---

[1] The Southern District Court transferred the Petition to this Court after adopting the magistrate's recommendation that construed the Petition as brought pursuant to § 2241, finding that the Petition was challenging Petitioner's continued detention under the Jimmy Ryce Act, and not challenging the validity of Lloren's underlying civil commitment proceeding. See Docs. #3, #5.

Statutes(2001)(the "Act"),² challenges the release provision of the Act resulting in his indefinite civil commitment.  Petition at 8.  More specifically, Petitioner contends that:

> The release provisions of the Jimmy Ryce Act, Part V. Of Chapter 394, *et. seq.*, Florida Statutes, violate substantive and procedural due process by shifting the burden of proof to the petitioner in review hearings.

Id.  In compliance with the Court's Order to Show Cause (Doc. #12), Respondent filed a Response to the Petition (Doc. #17, Response),

---

   ²The Act, formerly known as the Jimmy Ryce Act, provides that the agency having custody of a person convicted of a sexually violent offense must provide certain information to a multi-disciplinary team and the state attorney in the circuit where the person was last convicted of the sexually violent offense prior to the person's release from confinement. Fla. Stat. § 394.913(1)(a). Within 180 days after receiving such notice, "a written assessment as to whether the person meets the definition of a sexually violent predator and a written recommendation" is made by the multi-disciplinary team and provided to the state attorney. Fla. Stat. § 394.913(3)(e).  After review, the state attorney "may file a petition with the circuit court alleging that the person is a sexually violent predator and stating facts sufficient to support such allegation."  Fla. Stat. § 394.914.  The circuit court shall "determine that there is probable cause to believe that the person is a sexually violent predator."  Fla. Stat. § 394.915(1).  If the court finds that probable cause exists, then the person "must be held in custody in a secure facility without opportunity for pretrial release or release during the trial proceedings," even though the person has already completed his criminal sentence for the underlying sexual offense.  Fla. Stat. § 394.91I'm in 5(5).  The person is entitled to a trial within thirty (30) days of the probable cause determination, Fla. Stat. § 394.916(1); and, is entitled to the assistance of counsel, and the appointment of counsel if indigent. Fla. Stat. § 394.916(3).  The trial is civil in nature, and requires the State to prove by "clear and convincing evidence" that the person qualifies as a sexually violent predator; and, if determined by jury, "the verdict must be unanimous." Fla. Stat. § 394.917(1).  As more fully addressed *infra*, Lloren stipulated to an order of commitment under the Act.

and submitted exhibits in support of the Response (Doc. #18-1). Respondent submits that the Petition should be dismissed as time-barred. Response at 6. Respondent also claims that the sole ground for relief is unexhausted, because the Desoto Circuit Court was without jurisdiction to entertain the State petition for habeas corpus. Id. at 7. In the alternative, Respondent contends that the sole ground for relief is without merit. Id. at 8-13. Petitioner filed a Reply to the Response on January 13, 2011 (Doc. #20, Reply). Pursuant to the Court's November 19, 2012 Order (Doc. #23), Respondent supplemented the record (Doc. #24) with a copy of the March 13, 2006, Stipulation entered into by Petitioner and the State of Florida (Doc. #24 at 4-9, Stipulation). This matter is ripe for review.

## II.  Factual and Procedural History

Petitioner was determined to be a Sexually Violent Predator as defined by the Act by agreement between the parties reached through stipulation before the Sixteenth Judicial Circuit Court in and for Monroe County, Florida, on March 13, 2006. Doc. #18-1 at 1, 2. Specifically, the court ordered that Petitioner was "to be committed to the Department of Children and Family Services for control, care and, treatment, until such time, as provided by the agreement between the parties, as it is safe for the Respondent to be released." Doc. #18-1 at 1 (Commitment Order). More specifically, the circuit court "specifically incorporated" the

Stipulation executed by the State and Petitioner on March 13, 2006 in its Commitment Order. Id. In pertinent part, the Stipulation provides that Lloren "stipulates and agrees to the entry of the order of civil commitment" and consents to the terms of the Stipulation that provide that Lloren

> will be released from the Department of Children and Families Services secure facility when Dr. Eric Imhof, or, if Dr. Imhof is unavailable, another member of the multi-disciplinary team in this case, renders the opinion [Lloren] has sufficiently reduced his risk to sexually re-offend to a degree that is will be safe for him to continue his treatment in the community.

Doc. #24-1 at 5, 7, ¶9.

On April 30, 2008, the State Attorney filed a "Summary Report on the progress of Miguel Lloren from Eric A. Imhof, Psy.D., prepared on January 1, 2008" in the Sixteenth Judicial Circuit Court. Doc. #18-1 at 3-11. In his report, Dr. Imhof opined that:

> Mr. Lloren's mental condition has not adequately changed to the degree that he no longer poses a risk for sexual reoffense and he continues to meet criteria as a Sexually Violent Predator as defined in Florida Statues 394.910-394.931.

Id. at 10.

On February 26, 2009, Lloren filed a Petition for Writ of Habeas Corpus in the Florida Supreme Court. (A. 12-29). The sole ground for relief was that "the release provisions of the Jimmy Ryce Act . . . violate substantive and procedural due process by shifting the burden of proof to the petitioner in review hearings." Id. at 23-24. In an unpublished order, the Florida Supreme Court

transferred the petition to the Circuit Court of the Twelfth Judicial Circuit in and for DeSoto County, Florida, pursuant to Harvard v. Singletary, 733 So. 2d 1020 (Fla. 1999)(exercising discretion to decline jurisdiction over habeas petition challenging conditions of confinement and transferring to "a more appropriate court"). See Case No. SC09-391. On May 18, 2009, the circuit court denied the petition with citation to authority. Doc. #18-1 at 30. Lloren did not appeal this final order to the district court of appeal. Instead, on July 9, 2009, Lloren filed another original habeas petition directly with the Florida District Court of Appeal for the Second District on August 5, 2009, once again asserting the same ground for relief. Doc. #18-1 at 32-49. The State was not ordered to respond and the petition was denied without opinion on August 5, 2009. Id. at 50; Lloren v. Budz, 15 So. 3d 588 (Fla. 2d DCA 2009).

### III. Applicable Law and Findings

The continuation and/or execution of an initially valid confinement is properly brought pursuant to 28 U.S.C. § 2241. See Thomas v. Crosby, 371 F.3d 782, 810 (11th Cir. 2004)(collecting cases). The restrictions set forth in 28 U.S.C. § 2254, including the one-year limitations period set forth in § 2244(d)(1), applies to § 2241 petitions. Peoples v. Chatman, 393 F.3d 1352, 1353 (11th Cir. 2004). The Court construes the Petition as challenging Lloren's continued civil commitment under the Act, not the original

commitment process. Presumably, as a result of Dr. Imhof's Summary Report, the Sixteenth Judicial Court conducted a review of Lloren's status and found probable cause for Lloren's continued commitment. See Fla. Stat. § 394.918. Lloren's state petitions for writ of habeas corpus challenging his continued confinement are deemed to have tolled the federal limitations period. The instant Petition was filed within one-year of the Second District Court's denial of Petitioner's state habeas petition. Consequently, the Court does not find the instant Petition time-barred pursuant to 29 U.S.C. § 2244(d)(1).

The exhaustion requirement similarly applies to § 2241 petitions. Thomas v. Crosby, 371 F.3d 782, 812 (11th Cir. 2004)(explaining that "[a]mong the most fundamental law requirements of section 2241 is that petitioners must first exhaust their state court remedies"). Respondent argues that exhaustion is lacking because the circuit court in DeSoto County "was without jurisdiction to entertain the petition or grant the writ, as a matter of law." Response at 6-7. Here, the circuit court in DeSoto County assumed jurisdiction over Lloren's state petition, after the Florida Supreme Court transferred the state petition to it finding it "the more appropriate court." Response at 2. The DeSoto County circuit court rejected Lloren's claim that the release provisions of the Act violate substantive and procedural due process citing to In re Commitment of Allen, 927 So. 2d 1070

(Fla. 2d DCA 2006) and Westerheide v. State, 888 So. 3d 702 (Fla. 5th DCA 2004). The Court need not determine whether the Florida Supreme Court's order transferring the petition to the DeSoto County is an extraordinary circumstance warranting an exception to the exhaustion requirement, House v. Bell, 547 U.S. 518, 536-37 (2006), because Petitioner initiated a separate petition for writ of habeas corpus directly to the State appellate court. Exh. 18-1 at 32. The appellate court denied this petition without opinion. Id. at 50. The appellate court's silent denial nonetheless qualifies as an opinion on the merits. Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011); see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Consequently, the Court finds Petitioner exhausted his sole ground for relief and will turn to the merits of the Petition.

The Petition challenges the release provisions set forth at § 394.918 of the Act as unconstitutional because it places the burden of proof on the committed individual to prove that his condition has so changed that it safe for him to be at large before he is granted a trial to determine if his continued detention is warranted. Petition at 8. More specifically, an individual committed under the Act is entitled to annual mental examinations and annual review hearings.

> **Examinations; notice; court hearings for release of committed persons; burden of proof.**
>
> (1) A person committed under this part shall have an examination of his or her mental condition once every year or more frequently at the court's discretion. The person may retain or, if the person is indigent and so requests, the court may appoint, a qualified professional to examine the person. Such a professional shall have access to all records concerning the person. The results of the examination shall be provided to the court that committed the person under this part. Upon receipt of the report, the court shall conduct a review of the person's status.
>
> (2) The department shall provide the person with annual written notice of the person's right to petition the court for release over the objection of the director of the facility where the person is housed. The notice must contain a waiver of rights. The director of the facility shall forward the notice and waiver form to the court.
>
> (3) The court shall hold a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged. The person has the right to be represented by counsel at the probable cause hearing, but the person is not entitled to be present. If the court determines that there is probable cause to believe it is safe to release the person, the court shall set a trial before the court on the issue.

Fla. Stat. § 394.918(1)-(3).[3]

Florida Law places the burden upon the committed individual to establish probable cause to believe that his condition has changed before the state is required to prove that it is not safe for the

---

[3] In addition to the procedural safeguards of mandating an annual limited probable cause hearing, § 394.920, titled "Petition for Release," sets forth the procedures pursuant to which a committed individual may file "a petition for discharge at any time after commitment." Section 394.920 does not trigger the annual review. Petitioner does not reference § 394.920's release language.

person to be at large. In re Commitment of Allen, 927 So. 2d at 1073; Westerheide, 888 So. 2d at 705. If the petitioner produces evidence supporting probable cause, the trial court should consider only that evidence, without weighing the evidence submitted by the state. Id. at 1074. In determining probable cause, the trial court assumes the petitioner's evidence is true; and, if probable cause is shown, then the petitioner is entitled to a full trial under § 394.918(4). Allen, 927 So. 2d at 1074. "The court's task is not to make a final determination on the conflicting evidence, but rather to determine whether there is sufficient evidence to cause a person of ordinary prudence to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be at large." Chukes v. State, 90 So. 3d 950, 954 (Fla. 5th DCA 2012).

In the instant case, pursuant to § 394.918, the State submitted a report authored by Dr. Imhoff to the circuit court opining that Petitioner's "mental condition has not adequately changed" and "he continues to meet criteria as a Sexually Violent Predator as defined" in the Act. Doc. #18-1 at 10. Petitioner does not allege that he submitted a report or any other evidence to establish probable cause that his mental condition had adequately changed. Consequently, it appears that Petitioner's annual review hearing consisted only of Dr. Imhoff's uncontroverted report.

In order to obtain habeas relief, Petitioner must be able to demonstrate that the State court's rejection of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011). "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt." Id. (internal quotations and citations omitted). See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Petitioner refers the Court to the Foucha v. Louisana, 504 U.S. 71 (1992) in support of his contention that the Florida's court's adjudication of his state habeas petition contravenes governing federal law. Petition at 10. The petitioner in Foucha was adjudicated not guilty of criminal charges by reason of insanity and was deemed presently insane and committed to a forensic facility "until such time as doctors recommend that he be released, and until further order of the court." Id., 74. Four years later, a three-member panel "reported that there had been no evidence of mental illness since admission and recommended that Foucha be conditionally discharged." Id. A doctor appointed by

the court testified at the hearing that Foucha had "an antisocial personality, a condition that is not a mental disease and that is untreatable." Id., 75. Because Foucha had been involved in various altercations at the facility, the doctor stated that he did not "feel comfortable in certifying that [Foucha] would not be a danger to himself or to other people." Id. The trial court, "ruled that Foucha was dangerous to himself and others and ordered him returned to the mental institution."

The Supreme Court pointed out in order to commit an individual to a mental institution in a civil proceeding, the Due Process requires the State to prove by clear and convincing evidence "that the person sought to be committed is mentally ill and that he requires hospitalization for his own welfare and protection of others." Id. (citing Addington v. Texas, 441 US. 418 (1979)). A State may nonetheless commit a person without satisfying the Addington standard if a person is found not guilty of a criminal offense by reason of insanity, because the insanity finding establishes that: (1) a defendant committed a criminal offense, and (2) he committed the offense because of mental illness. Id., 76. Thus, from these two acts "it could be properly inferred that at the time of the verdict, the defendant was still mentally ill and dangerous and hence could be committed." Id. However, noting that it is "unconstitutional for a State to continue to confine a harmless, mentally ill person," "the committed acquittee is entitled to release when he has recovered his sanity or is no

longer dangerous." Id., 77 (citing Jones v. U.S., 463 U.S. 354, 368 (1983). Noting that the State conceded that Foucha was no longer mentally ill at the time of the trial court's hearing, the Supreme Court found that Foucha's personality disorder was insufficient to warrant his continued commitment, absent a showing that he was either dangerous or mentally ill. Id. More specifically, the Court found that the "nature of commitment bear some reasonable relation to the purpose for the individual is committed." Id., 79. Foucha's initial commitment was premised on his being found insane, not a diagnosis that he suffered from a personality disorder. Consequently, the Court deemed Louisiana's civil commitment statute unconstitutional because it failed to comply with due process because it did not afford Foucha an "adversary hearing at which the State must prove by clear and convincing evidence that he is demonstrably dangerous to the community," and; in fact, permitted that "the State need prove nothing to justify continued detention." Id., 81-82.

The Court recognizes that "[f]reedom from bodily restraint has always been at the core of liberty protected by the Due Process Clause." Foucha at 80. However, the holding of Foucha is not at odds with the facts of the instant case. The Act under which Lloren was civilly committed requires the State to carry the burden by clear and convincing evidence that Lloren qualifies as a sexually violent predator at his initial commitment trial and before he is indefinitely detained. Fla. Stat. § 394.917(1). The

procedures set forth in the Act comport with the substantive demands of due process because an individual is provided an opportunity to challenge the reasons claimed for his commitment prior to his detention. Kansas v. Hendricks, 521 U.S. 346, 357 (1997). Here, unlike the petitioner in Foucha, Petitioner does not present any evidence that his mental condition for which he was initially committed has changed.

Nor can Petitioner demonstrate that placing the burden on the committed individual to prove that his mental condition has changed so that it is safe for him to be released in a subsequent hearing violates governing federal law. Petitioner points to no Supreme Court precedent that prohibits a committed individual from bearing the burden of proof in a subsequent release hearing. Indeed, in Jones v. United States, the Supreme Court refused to address whether the release provisions of the District of Columbia's insanity statute, which requires the acquittee to prove by a preponderance of the evidence that he is not longer mentally ill, was constitutional. Id., 463 U.S. 363, n.11 (noting that petitioner did not ask whether release provisions were constitutional).

However, in the insanity context, the Eleventh Circuit has held that placing the burden of proof on insanity acquittees at release proceedings under Georgia and Alabama law was constitutional. See Benham v. Ledbetter, 785 F.2d 1480, 1491-92 (11th Cir. 1986)(holding, *inter alia*, that the procedure of placing

-13-

the burden of proof on the insanity acquittee at the release proceeding under Georgia's statutory scheme did not violate due process); Williams v. Wallis, 734 F.2d 1434, 1440 (11th Cir. 1984)(holding that under Alabama's statutory scheme for release of insanity acquittees, "due process does not forbid placing the burden of proof on the acquittee at the habeas proceeding to prove by a preponderance of the evidence that he is no longer mentally ill or dangerous"). Similarly, the Eleventh Circuit has found that 18 U.S.C. § 4243(d)'s placement of the burden of proof upon a person found not guilty only by reason of insanity at the time of an offense to prove by clear and convincing evidence that his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect does not violate due process. U.S. v. Wattleton, 296 F.3d 1184, 1198 (11th Cir. 2002)[4]; see also United States v. Phelps, 955 F.2d 1258, 1267-68 (9th Cir. 1992)(finding § 4243 "does not violate due process by placing the burden of proof on an insanity acquittee in a release hearing."); United States v. Wallace, 845 F.2d 1471, 1474 (8th Cir. 1988)(stating "placing the burden of proof on a defendant found not

---

[4] The Eleventh Circuit noted that "practical considerations support allocating the burden of proof" at the hearing. Wattleton, 296 F.3d at 1200. Because a finding of dangerousness relies upon recommendations by mental health experts, an acquittee could impede a mental health assessment by being recalcitrant if the burden was on the government. Id. Placing the burden on the acquittee provides the acquittee with an incentive to cooperate fully in any mental health examinations. Id.

guilty only by reason of insanity and committed in accordance with § 4243 comports with due process and passes constitutional muster."). Accord Dorsey v. Solomon, 604 F.2d 271, 274 (4th Cir. 1979)(finding proper to place the burden of proving fitness for release on inmates who were previously committed in accordance with constitutionally adequate procedure).

Because Petitioner does not show that the State court's rejection of his habeas corpus petition was contrary to or an unreasonable application, or was based on an unreasonable determination of the facts in light of the evidence presented, the Court denies Petitioner relief on his sole ground in the Petition. The Court expresses no opinion on whether the terms and conditions of the Stipulation mirror the provisions of the Act or otherwise set forth different or additional requirements for Petitioner's release.

ACCORDINGLY, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED for the reasons set forth above.**

2. The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and close this file.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. Under 28 U.S.C. § 2253, a certificate of appealability must issue to appeal a final order in

a habeas proceeding "in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1)(A). The Eleventh Circuit has broadly construed this language to require a petitioner who appeals the denial of 2241 habeas petition pertaining to disciplinary proceedings to obtain a certificate of appealability, finding that the prisoner's detention originated "out of process issued by a State court." Medberry v. Crosby, 351 F.3d 1049, 1063 (11th Cir. 2003); see also Sawyer v. Holder, 326 F.3d 1363, 1364 n.3 (11th Cir. 2003)(finding state prisoners, as opposed to federal prisoners, who proceed under 2241 must obtain a certificate of appealability). Consequently, in an abundance of caution, the Court considers whether a certificate of appealability should issue in connection with the denial of this § 2241 petition.

"A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___7th___ day of December, 2012.

                                          JOHN E. STEELE
                                          United States District Judge

SA: hmk
Copies: All Parties of Record